UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAJESCO,<br><br>               Plaintiff,<br><br>        -against-<br><br>ROBERT THRALL and EQUISOFT INC.,<br><br>               Defendants. | Case No.:   1:26-cv-04884 |

## **COMPLAINT**

Plaintiff Majesco ("Majesco" or the "Company"), by its attorneys, Sheppard, Mullin, Richter & Hampton LLP, alleges as follows for its Complaint against defendants Robert Thrall ("Thrall") and Equisoft Inc. ("Equisoft"):

## **INTRODUCTION**

1. This is an action for breach of contract, tortious interference, and related claims arising out of Thrall's blatant violation of restrictive covenants and other promises contained in written agreements governing his employment with Vitech Systems Sub LLC, dba Vitech Systems Group ("Vitech") and, after Majesco's acquisition of Vitech in January 2026, his employment with and subsequent voluntary resignation from Majesco, and Equisoft's tortious interference with Thrall's obligations to Majesco.

2. Notwithstanding Thrall's clear post-termination obligations to the Company under both his employment agreement and transition agreement, and despite his receipt of a generous severance package he was not otherwise entitled to as consideration for abiding by those post-termination obligations, Thrall joined one of the Company's direct competitors, Equisoft, almost immediately after his voluntary resignation from Majesco in April 2026. Upon information and belief, Equisoft encouraged and induced Thrall to do so despite Equisoft's knowledge of Thrall's

-1-

post-termination obligations to Majesco.  When the Company learned of Thrall's new position with Equisoft and reminded him of his contractual obligations to refrain from improper competitive activity for the time period delineated in the parties' agreements, Equisoft disputed that Thrall was in breach of any obligations and Thrall refused to cease and desist from competing with the Company.

3.     Thrall's breach of and Equisoft's tortious interference with the parties' employment agreement and transition agreement following Thrall's voluntary resignation from Majesco has unjustly enriched Defendants for the value of any profits they may have made as a result of their improper actions, has deprived Majesco of valuable business opportunities and, upon information and belief, has damaged the Company's relationships with its clients.

4.     Through this action, Majesco seeks injunctive relief, damages, and all other remedies available to halt Thrall's and Equisoft's unfair competitive activity and prevent further irreparable harm to the Company.

## PARTIES, VENUE AND JURISDICTION

5.     Majesco is a California corporation with its principal place of business in Morristown, New Jersey.

6.     Upon information and belief, Thrall is a citizen and resident of the State of Florida.  Thrall is a former Majesco employee and a current employee of Majesco's direct competitor, Equisoft.

7.     Upon information and belief, Equisoft is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania.

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Equisoft regularly conducts business within this judicial district and Thrall expressly agreed to submit to the jurisdiction of this Court in connection with any action arising in connection with agreements governing his employment with and separation from Majesco.   Thrall's breaches of his obligations under those agreements with Majesco are the subject of this Complaint.

## FACTUAL ALLEGATIONS

10.      Majesco is a leading cloud-based software service provider that delivers core software and ancillary solutions to the Property & Casualty ("P&C"), Life, Annuity & Health ("L&AH"), and Retirement & Pension ("R&P") insurance sectors.   Majesco's software is designed to help insurers, TPAs, reinsurers, and managing general agents modernize their operations, automate processes, and adapt to changing market expectations.   The Company's software and ancillary services are utilized by its customers across all products and segments of the insurance sectors.   Specifically for L&AH, it is used for group, voluntary benefits, worksite and individual products.

11.      By letter agreement dated December 4, 2024, Thrall entered into an employment agreement with Vitech to become its Chief Sales Officer, effective December 17, 2024 (the "Employment Agreement").   At the time, Vitech offered a range of software solutions to two segments in the L&AH and R&P sectors: (i) retirement and pension administrators for public or Taft Hartley plans and pension risk transfer (PRT) insurers; and (ii) group and voluntary benefits only insurers.   Vitech's customers were primarily R&P funds and insurance companies.

12.      In the Employment Agreement, Thrall acknowledged that, as a result of his employment with Vitech as its Chief Sales Officer, he would have access to confidential and proprietary information regarding Vitech's customers, sales history, sales projections, pricing, and prospects that was not publicly-available, and he was later granted such access in connection

with his job duties.  Accordingly, as an express condition of Thrall's employment with Vitech,

and in order to protect Vitech's confidential information and goodwill, Thrall agreed to abide by

certain restrictive covenants both during and after his employment period.

13.    Specifically, Thrall agreed, in relevant part, that:

8. Non-Competition; Non-Solicitation of Clients and Employees:

(a) During your employment with the Company and for twelve (12) months following the termination of such employment for any reason (the "Restricted Period"), you shall not, anywhere within the United States of America (the "Restricted Territory"), directly or indirectly (A) engage in, for your own benefit or for the benefit of any person or entity, a business that is in the same or similar business and competitive with the business conducted by, or actively planned to be conducted by, or otherwise competitive with the business of any member of the Company Group (the "Business") or (B) otherwise, own, manage, operate, control, advise, be employed by or provide services to (in either case, in a capacity that is competitive with the business of the Company), or participate in the ownership, management, operation or control of, or be connected in any manner with (where such connection is competitive with the business of the Company), any person or entity that is engaged in, or actively planning to engage in, the Business (any such person or entity, a "Competing Business"), including but not limited to Basys, Sungard, Sagitec Solutions, Sapiens International Corp., Efront, Accenture, Deloitte Consulting, Tegrit Technologies, Trizetto & Advent Software, EIS Group Software, Majesco Limited, EXLService Holdings, FINEOS Corporation, Morneau Shepell, FAST Technology, Verisk, Linea Solutions, and Segal Group. Notwithstanding the foregoing, your passive ownership solely as an investor of three percent (3%) or less of the outstanding securities of any class of any publicly traded securities of any company shall not, by itself, be a breach of this Section 8.

(b) During the Restricted Period, you also shall not, directly or indirectly: (i) persuade or attempt to persuade (A) any person or entity who is (or, at any time during the one (1) year period prior to the prohibited activity, was) a customer or client of the Company or any other member of the Company Group or (B) any potential customer or client of the Company or any other member of the Company Group to which you have (or an employee who reports to you has) made a presentation or with respect to which you had access to confidential or proprietary information within the one (1) year period prior to such prohibited activity, (1) not to hire, engage or purchase products or services from the Company or any other member of the Company Group or (2) to hire, engage or purchase products or services from a Competing Business within the Restricted Territory; or (ii)

-4-

> solicit for employment or hire (or solicit for engagement as an independent contractor or engage as an independent contractor) any person who is (or, at any time during the one (1) year period prior to the prohibited activity, was) an employee (or independent contractor) of the Company or any other member of the Company Group, or otherwise encourage any employee of, or independent contractor with, the Company or any other member of the Company Group to terminate his or her employment with or engagement by the Company or any other member of the Company Group or accept employment or a consulting relationship with any entity or person other than the Company or any other member of the Company Group.

(Employment Agreement § 8).

14.    Thrall specifically acknowledged and agreed that the above restrictions were reasonable and necessary to protect Vitech's interests.  He also acknowledged and agreed that: "in the event of a breach or threatened breach by [Thrall] of any of these [restrictive covenants], [Vitech] . . . shall be entitled to obtain from any court of competent jurisdiction preliminary and permanent injunctive relief (without proving actual damages or posting a bond or other security)".  (Employment Agreement § 10).

15.    In addition to the above terms, Thrall acknowledged and agreed that Vitech had the right to assign the Employment Agreement to its successors in interest, and that its terms – including the restrictive covenants – would bind and inure to the benefit of Vitech's successors and assigns by way of purchase or otherwise.  Specifically, the Employment Agreement provides:

> 16. Successors and Assigns; Third-Party Beneficiaries:
>
> This Agreement shall bind and inure to the benefit of and be enforceable by the Company and its successors and assigns and you and your heirs, executors, administrators, and successors; provided that the services provided by you are of a personal nature and you cannot sell, convey, assign, delegate, transfer or otherwise dispose of, directly or indirectly, any of your rights, or obligations under this Agreement (and any such purported action by you shall be null and void); provided further that the Company may assign this Agreement to, and all rights hereunder shall inure to the benefit of, any subsidiary or affiliate of the Company or any person, firm or corporation resulting from the reorganization of

the Company or succeeding to the business or assets of the Company by purchase, merger, consolidation or otherwise. Each member of the Company Group is an intended third-party beneficiary with respect to Sections 6 through 19 hereof.

(Employment Agreement § 16).

16.     The Employment Agreement is governed by New York law, and the parties consented to personal jurisdiction in New York, New York in any action to enforce its terms. (Employment Agreement § 15).

17.     On or about January 7, 2026, Majesco acquired Vitech (the "Acquisition"). In connection with the Acquisition, Majesco assumed all of Vitech's assets and goodwill, including but not limited to Vitech's employment agreements with Thrall and others. Thrall also received a significant transaction bonus under the terms of his agreements with Vitech shortly thereafter.

18.     In connection with that Acquisition and pursuant to Section 16 of Thrall's Employment Agreement, Thrall's Employment Agreement was assigned to Majesco as Vitech's successor in interest, and Thrall was slated to become a Majesco employee when the Acquisition closed.

19.     As part of his duties as Chief Sales Officer for Vitech, Thrall was significantly involved in the Acquisition. In fact, during the due diligence process, Thrall participated in management presentations to Majesco regarding Vitech's business, customers, and pipeline, provided information to Majesco in connection with the due diligence process, and assisted with the transitioning of Vitech's business to Majesco post-closing.

20.     On or around January 2, 2026, however, just days before the closing, Thrall notified Majesco that he wished to resign his employment, purportedly for "Good Reason" as defined in the Employment Agreement.

21.     By letter dated January 23, 2026, Majesco responded to Thrall by disputing that Good Reason for his resignation existed. Nevertheless, Majesco agreed to accept Thrall's

voluntary resignation after a 90-day notice period.  Majesco also reminded Thrall of his post-employment obligations to Majesco as a result of his Employment Agreement's assignment to Majesco as Vitech's successor in interest, "including [Thrall's] obligations to refrain from (i) disclosing the Company's Confidential Information, Company Intellectual Property or Work Product (as such terms are defined in the Employment Agreement), (ii) competing with the Company for a period of one (1) year after the end of [his] employment with the Company, (iii) soliciting the Company's employees for a period of one (1) year after the end of [his] employment with the Company, and (iv) soliciting the Company's customers/clients for a period of one (1) year after the end of [his] employment with the Company."

22.     Thereafter, Majesco and Thrall negotiated a Transition Agreement and Release (the "Transition Agreement"), dated January 23, 2026.  The Transition Agreement provided that Thrall would remain as an employee of Majesco through April 2, 2026, receiving full salary and benefits, during which time he would make himself available to assist with the transition of his job duties.  Thereafter, on April 2, 2026, and provided he re-executed and did not revoke the Transition Agreement, Majesco agreed to pay Thrall a lump sum severance payment equal to six months' base salary.

23.     Among other terms, the Transition Agreement expressly reincorporated the restrictive covenants contained in the Employment Agreement and conditioned payment of the severance payment on Thrall's adherence to those covenants.  Specifically, the Transition Agreement provides that:

> 5. Entire Agreement. This Agreement constitutes the entire agreement between the parties pertaining to the subject matter hereof, and is the final, complete and exclusive expression of the terms and conditions of their agreement. All prior agreements, representations, negotiations and understandings, oral or written, express or implied, are hereby suspended and merged herein. **Notwithstanding the foregoing, nothing in this Agreement**

> **modifies or supersedes any of Employee's continuing obligations of confidentiality, non- solicitation and non-competition to Majesco or any of its affiliates under any agreement (including, without limitation, those contained in Employee's employment agreement with Vitech Systems Sub LLC ("Vitech"), dated December 4, 2024 (the "Employment Agreement")). It is understood and agreed that Sections 6, 7, 8, 9 and 10 of the Employment Agreement are expressly incorporated herein and shall continue to remain in full force and effect.**

(Transition Agreement § 5 (emphasis added)).

24.     Thrall continued his employment with Majesco for the duration of the 90-day transition period and Majesco satisfied all conditions under the Transition Agreement, including by continuing to pay Thrall his salary and benefits through April 2, 2026.

25.     Thrall and Majesco re-executed the Transition Agreement on Thrall's April 2, 2026 resignation date, and Majesco promptly paid Thrall a lump sum severance payment equal to six months' salary pursuant to the parties' agreement.

26.     Since Thrall's resignation from Majesco, the Company has discovered several issues relating to Thrall's pre-Acquisition conduct that raise concerns, including that he rushed to calculate commission payments for payout around the closing date even though certain invoices were subject to customer dispute, and that he knowingly presented inaccurate sales pipeline forecasts to Majesco as part of the Company's diligence review.

27.     On or about April 16, 2026, Majesco learned that Thrall had joined Equisoft, one of Vitech's and Majesco's competitors in the individual and group insurance space, as Equisoft's Chief Sales Officer following his voluntary resignation from the Company.

28.     On Thrall's LinkedIn resume, he describes his job duties for Equisoft as "lead[ing] global sales strategy, ARR Revenue growth, and client engagement across our core markets." Thrall further states that "[i]n my role, I will focus on building a high-performing pre-

-8-

sales and sales team expanding our strategic partnerships and delivering value-driven solutions to clients . . . . With the increase use of AI within the Insurance Policy life-cycle and with our internal use of AI in our tools, platform and operations we can leverage both increased productivity and accelerated innovation to drive more value for our customers."  Thrall further states that "I've come full-circle back to my Insurance roots as I work to help grow Equisoft's top line, bottom line and Annual Recurring Revenue."

29. Equisoft, like Majesco, is a software service provider that delivers core software and ancillary solutions for the P&C, L&AH, and R&P insurance sectors.  Equisoft's software and ancillary services, like Majesco's, are also utilized by customers for group, voluntary benefits, worksite, and individual insurance products.

30. Equisoft describes its insurance software solutions on its website as follows: "From CRM to claims management, we build insurance solutions for every part of the transformation journey. Designed to support all lines of business our technology is used worldwide as stand-alone modules, integrated software solutions and complete back to front office platforms."  Equisoft's software and services are for both "individual and group" insurance.

31. Equisoft's and Majesco's status as competitors in the group, voluntary benefits, worksite, and individual insurance spaces is confirmed by independent third-party industry analyst reports.  For example, third party research and advisory firm, Celent, has noted in its 2026 reports that Equisoft and Majesco both have customers in the individual and group insurance spaces.  Celent has also noted in its 2026 reports that both Equisoft and Majesco compete with respect to "life, annuities, and pension insurance administration systems available in North America for Group insurance."

32.    The competitive nature of their businesses is further highlighted by the fact that Equisoft, Majesco, and Vitech (pre-Acquisition) all attend the same industry conferences in order to market their competing products, including as recently as October 2025, when representatives from Equisoft, Majesco, and Vitech all attended the ITC (InsureTech Connect) conference in Las Vegas, Nevada.

33.    Upon information and belief, Equisoft knew of Thrall's contractual obligations to Majesco pursuant to the Transition Agreement, including Thrall's post-termination restrictive covenants from his Employment Agreement that were specifically incorporated by reference into the Transition Agreement, and Equisoft intentionally encouraged and induced Thrall to breach those restrictive covenants by joining Equisoft just two weeks after his resignation date from Majesco.

34.    By letter dated April 17, 2026, Majesco demanded that Thrall terminate his employment with Equisoft because "[his] employment by Equisoft as Chief Sales Officer, a competitor of Majesco, violates the terms of [his] Employment Agreement and Transition Agreement."

35.    Also by letter dated April 17, 2026, Majesco advised Equisoft that it had learned that Thrall was providing services to Equisoft, that Thrall was bound by certain post-employment obligations to Majesco, and that his employment with Equisoft breached those obligations.

36.    By letter dated May 4, 2026, Equisoft's counsel disputed Majesco's claim that Thrall is in breach of his restrictive covenants.

37.    To date, Thrall has refused to comply with Majesco's demand that he cease his employment with Equisoft during the non-compete periods applicable under the Employment Agreement and as incorporated into the Transition Agreement.

38.     Upon information and belief, since Thrall's voluntarily resignation from Majesco and commencement of employment or engagement with Equisoft, Thrall has been providing the same types of sales services as an Equisoft employee as he formerly performed during his employment with Majesco and Vitech.

## COUNT I

(Breach of Contract)

39.     Majesco repeats and realleges paragraphs 1 through 38 as if fully set forth herein.

40.     The Employment Agreement entered into between Vitech and Thrall is a valid and enforceable contract, supported by valid consideration.

41.     Under the Employment Agreement, Thrall agreed that, for twelve months following the termination of his employment he would not compete with Vitech or its affiliated entities, or solicit the current or former clients or employees of Vitech or its affiliated entities.

42.     The Employment Agreement contains an assignment clause that permitted Vitech to assign its rights and obligations under the Employment Agreement to Majesco, and Vitech did in fact assign the Employment Agreement to Majesco in connection with Majesco's Acquisition of Vitech.

43.     Vitech, and later Majesco, fully performed all of their obligations under the Employment Agreement by employing Thrall from December 17, 2024 up to his voluntary resignation effective as of April 2, 2026, by paying him all amounts due under the Employment Agreement, by training Thrall during his employment period, and by giving Thrall access to Vitech's and Majesco's confidential and proprietary business information in connection with his employment.

44.     The Transition Agreement entered into between Majesco and Thrall is a valid and enforceable contract, supported by valid consideration.

45.     Under the Transition Agreement with Majesco, Thrall agreed that the restrictive covenants contained in his Employment Agreement were fully incorporated into the Transition Agreement.

46.     Majesco fully performed all of its obligations under the Transition Agreement by continuing to employ Thrall through April 2, 2026 and by timely paying Thrall the severance benefit contemplated by the Transition Agreement.

47.     Despite Thrall's contractual obligations, he breached the Employment Agreement and the Transition Agreement by joining Majesco's direct competitor, Equisoft, during the non-compete and non-solicitation periods delineated in the Employment Agreement and incorporated into the Transition Agreement.

48.     Despite Thrall's contractual obligations, upon information and belief he has breached the Employment Agreement and the Transition Agreement by assisting Majesco's direct competitor, Equisoft, to solicit work from and provide services to Vitech's and Majesco's clients and prospective clients during the non-compete and non-solicitation periods delineated in the Employment Agreement and incorporated into the Transition Agreement.

49.     As a result of Thrall's violations of the Employment Agreement and the Transition Agreement, Majesco has suffered damages, including but not limited to, irreparable harm associated with damage to its goodwill, customer relationships, and reputation, and other damages known and to be discovered.

## COUNT II

### (Injunctive Relief)

50.     Majesco repeats and realleges paragraphs 1 through 49 as if fully set forth herein.

51.     Under the Employment Agreement, the parties agreed that the period of Thrall's post-termination restrictions would last for twelve months following Thrall's termination date.

52.    Under the Transition Agreement, the parties agreed that the post-termination restrictions set forth in the Employment Agreement were fully incorporated into the Transition Agreement.

53.    Thrall further agreed in Section 10 of the Employment Agreement that, in the event of an actual or threatened breach of the restrictive covenants contained therein, Vitech and its successors and assigns, including Majesco, would be entitled to injunctive relief in addition to any other damages.  Specifically, the Employment Agreement provides that:

> You acknowledge that the restrictions contained in Sections 6 through 9 of this Agreement, in view of the competitive nature of the business in which the Company and other members of the Company are engaged, are reasonable and necessary in order to protect the legitimate interests of the Company and the other members of the Company Group, and that any violation would result in irreparable injury to the Company or other members of the Company Group, as applicable. You therefore acknowledge and agree that, in the event of a breach or threatened breach by you of any of these Sections, the Company and other members of the Company Group, as applicable, shall be entitled to obtain from any court of competent jurisdiction preliminary and permanent injunctive relief (without proving actual damages or posting a bond or other security), as well as damages and an equitable accounting of all earnings, profits and other benefits arising from such violation, which rights shall be cumulative and in addition to any other rights or remedies to which the Company and other members of the Company Group may be entitled. You also acknowledge and agree that each of the restrictions and covenants in Sections 6 through 9 of this Agreement shall be construed for all purposes to be separate and independent from any other covenant, whether in this Agreement or otherwise, and the existence of any claim against the Company or any other member of the Company Group under this Agreement or otherwise, will not excuse your breach of any restrictions or covenants contained in this Agreement.

54.    Pursuant to Section 5 of the Transition Agreement, the parties specifically incorporated Section 10 of the Employment Agreement into the Transition Agreement's terms.

55.    By working with or for Equisoft and/or other Majesco competitors to provide sales services that are directly competitive with services that Majesco provides and/or solicit

-13-

Majesco's business, Thrall has breached the restrictive covenants set forth in the Employment Agreement and incorporated in the Transition Agreement.

56.     Accordingly, based on Thrall's breach of the restrictive covenants set forth in the Employment Agreement and incorporated into the Transition Agreement, Majesco is entitled to an injunction prohibiting Thrall from engaging in any competitive activity otherwise proscribed under the parties' Employment Agreement and Transition Agreement.

57.     Majesco is also entitled to an extension of the non-compete and non-solicitation periods delineated in the Employment Agreement and incorporated into the Transition Agreement to reflect the tolling of the non-compete and non-solicitation periods during Thrall's period of his breach of his obligations under the Employment Agreement and Transition Agreement.

## COUNT III

### (Tortious Interference With Contract)

58.     Majesco repeats and realleges paragraphs 1 through 57 as if fully set forth herein.

59.     Thrall had valid and enforceable contractual obligations to Majesco, including but not limited to Thrall's post-termination restrictive covenants from his Employment Agreement that were specifically incorporated by reference into the Transition Agreement.

60.     Upon information and belief, Equisoft knew of Thrall's restrictive covenants and other contractual obligations to Majesco under the Transition Agreement.

61.     Despite Equisoft's knowledge of Thrall's restrictive covenants, Equisoft intentionally, improperly, and unjustifiably procured Thrall's breach of his restrictive covenants by inducing him to joining Equisoft on or about April 16, 2026, just two weeks after his resignation date from Majesco.

-14-

62.    Following Equisoft's inducement and procurement of Thrall to breach his restrictive covenants, Thrall did in fact breach his contractual obligations by joining Equisoft just two weeks after his resignation from Majesco.

63.    As a result of Equisoft's tortious interference with Thrall's contractual obligations, Majesco has suffered damages, including but not limited to, irreparable harm associated with damage to its goodwill, customer relationships, and reputation, and other damages known and to be discovered.    Equisoft's misconduct was willful, wanton, and outrageous.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Majesco respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

(a)    Entry of preliminary and permanent injunctive relief;

(b)    Tolling the non-compete and non-solicitation periods delineated in the Employment Agreement and incorporated into the Transition Agreement, enjoining Thrall from performing services for Equisoft or any other competitor of Majesco during the non-compete period, and enjoining Defendants from soliciting Majesco's employees or clients or otherwise violating the terms of the parties' Employment Agreement and Transition Agreement until such date to be determined at trial;

(c)    Awarding damages, together with pre- and post-judgment interest;

(d)    Entry of judgment awarding Plaintiff its reasonable costs and attorneys' fees;

(e)    Awarding punitive damages; and

(f)    Granting Plaintiff such other and further relief as the Court deems just and proper.

DATED:  June 9, 2026                                Sheppard Mullin Richter & Hampton LLP


                                                    By _____ */s/ Sean J. Kirby* _____
                                                        Sean J. Kirby
                                                        Scott T. Earl
                                                        Matthew Netti
                                                        30 Rockefeller Plaza
                                                        New York, New York 10112
                                                        Tel:  (212) 653-8700
                                                        Fax:  (212) 653-8701
                                                        skirby@sheppard.com
                                                        searl@sheppard.com
                                                        mnetti@sheppard.com
                                                        *Attorneys for Plaintiff Majesco*

-16-